Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# OPINION

Nos. 04-07-00238-CR, 04-07-00239-CR

Michael **MARTINEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court Nos. 05-05-00118-CRA, 05-05-00119-CRA
Honorable Stella H. Saxon, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Alma L. López, Chief Justice
               Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice

Delivered and Filed:   September 24, 2008

AFFIRMED

In three issues, Michael Martinez appeals his convictions for aggravated sexual assault.

Finding no error, we affirm the judgments of the trial court.

## BACKGROUND

Martinez was indicted under two cause numbers, each containing two counts of aggravated

sexual assault of a child.  Martinez was accused of molesting his two stepdaughters, S.M. and A.A.,

both of whom testified at trial.  The following relevant testimony was presented at trial. S.M., who

was fourteen years old at the time of trial, testified that Martinez's sexual advances toward her began when she was about five years old and continued until she was twelve years old. S.M. stated the abuse started when Martinez put her hand on his lap, in between his legs, while they were driving in his truck. On a later occasion, inside their home, he put his hands inside her shorts when she was sitting on his lap covered by a blanket. S.M. specified that he inserted two fingers in her vagina, and that this type of touching happened frequently until she was twelve years old. S.M. stated that she never told her mother what was happening for fear of what "would happen to the whole family." In 2004, S.M. was in seventh grade when she told her grandmother about the abuse. She gave a statement to the police and her mother kicked Martinez out of the house that same weekend. S.M. was also interviewed by Child Protective Services (CPS). The defense attempted to get S.M. to admit that she only outcried because she was angry at Martinez for telling her mother that she was seeing a boy she was not supposed to be dating.

A.A., who was seventeen years old at the time of trial, testified that from the age of nine or ten, Martinez often touched her by inserting his finger in her vagina. On one occasion, she was home sick from school and Martinez licked her genitals. A.A. also recounted a family vacation to Corpus Christi where Martinez put his fingers inside her vagina in the hotel room. She said she did not speak up at the time because she felt ashamed and because she did not want to ruin the vacation for everyone. A.A. did finally tell her mother about the abuse when she was in the eighth grade. At the time, A.A. was in trouble for having plucked her eyebrows. The family then went to CPS for interviewing, and shortly thereafter A.A. recanted her accusation. About two years later, and a few months after her sister S.M. outcried, A.A. told a CPS social worker that she had lied about recanting

and that Martinez had also sexually assaulted her. The defense portrayed A.A. as a "problem child" who was prone to lying, and who could not be trusted because she had recanted her first accusation.

Dr. Nancy Kellogg, a pediatrician who specializes in child abuse and neglect, testified that children often take years to disclose that they have been abused because they fear they will not be believed or will be blamed for what happened, or they fear the accusation will disrupt the family and cause turmoil. Kellogg also stated that many children who have been abused appear outwardly normal and try to accommodate the abuser because they cannot get away from an abuser who lives in the same house.

The girls' mother, Teresa Martinez, testified that when A.A. first outcried in 2002, she was unsure whether A.A. was telling the truth because A.A. had problems being honest in the past. However, Teresa took her daughter's accusation seriously because the next day she took the children to CPS for interviewing and then asked Martinez to move out of the house.

CPS caseworker Amy Ventura stated that she interviewed A.A. in her home the day after she first accused Martinez of assaulting her. Martinez had already moved out of the home at the suggestion of Teresa Martinez. During the interview, A.A. told her that she had made up the story because she was in trouble for making bad grades and plucking her eyebrows, and stated that her parents were strict and angry. Ventura thought it was strange that A.A. recanted while the family was disrupted, insinuating that A.A. felt responsible for the break up of the family. Ventura admitted, however, that she did not interview the other children in the family for signs of possible abuse and closed the case.

The defense presented Mary Ortiz, a school social worker, who stated she provided counseling for the Martinez family after A.A. recanted. According to Ortiz, Martinez appeared to be an involved father who cooked, cleaned, and watched over the children. In Ortiz's experience, children who are sexually abused usually outcry immediately, although she also stated that abused children do not come forward because they are ashamed.

The jury found Martinez guilty on all four counts of aggravated sexual assault and assessed punishment at twenty years' confinement in each case, with the sentences to run concurrently. Martinez filed a motion for new trial, which was denied by the trial court. On appeal, Martinez complains of: (1) the denial of his motion for mistrial; (2) jury selection; and (3) improper bolstering of a witness.

## DISCUSSION

### 1. *Denial of Motion for Mistrial*

During general voir dire, the following exchange occurred, beginning with a question to a veniremember by the prosecutor:

State:                         [Defense counsel] asked about children lying. Do adults lie? Do adults lie every day?

Veniremember No. 30:           Yes.

State:                         Alright. Who on the panel thinks it means a lot to - - do you think that the person who committed the offense is going to be that much more leery about perjury, swearing an oath and saying I didn't do this crime? Or do you think that's going to carry a big thing with a kid?

Defense counsel immediately approached the bench, and objected out of the hearing of the panel, stating that the question was a reference to his client's right not to testify, and moved for a mistrial.

The trial court sustained the objection but denied the motion for mistrial. Martinez contends that his credibility was attacked when the prosecutor suggested that anyone who would commit the charged offense would not hesitate to lie about it. Martinez further argues that the prosecutor's remarks during voir dire raised the jury's expectation that he would testify, and when he did not testify during guilt-innocence, the prosecutor's remarks became a comment on his right not to testify.

### *Applicable Law*

We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). The trial court's ruling will be upheld if it is within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

A defendant may preserve error by moving for a mistrial without first requesting an instruction to disregard if the instruction could not have cured the harm. *See Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004). Except in the most "blatant" instances, harm from a comment on a defendant's failure to testify is cured by an instruction to disregard. *Moore v. State*, 999 S.W.2d 385, 405-06 (Tex. Crim. App. 1999).

The failure of an accused to testify may not be commented upon by the judge or the prosecution because it offends the constitutional privilege against self-incrimination. *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). To determine whether this privilege has been violated, the offending statement should be viewed from the jury's standpoint. *Id.* at 765. The implication that the comment referred to the defendant's failure to testify must be clear; it is not enough that the statement may be construed as an indirect or implied allusion to the accused's failure

to testify. *Id.* "The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* We must analyze the context in which the comment was made to determine whether the language used was of such a character. *Id.*

*Analysis*

Here, Martinez argues that the jury could have inferred from the prosecutor's remarks that he chose not to testify for fear of committing perjury. We do not agree that the prosecutor's remark was a clear referral to Martinez's right not to testify; however, assuming that it was, the trial court properly sustained the objection and we must next determine whether an instruction to disregard would have cured any harm or prejudice resulting from the improper remark. We analyze the following factors to determine whether an improper remark to the jury warrants a mistrial: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *See Archie*, 221 S.W.3d at 700; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

When looking at the severity of the misconduct, we note that the State's allegedly improper comment was brief and was not repeated. *Archie*, 221 S.W.3d at 700. Further, the comment did not demonstrate any "willful or calculated effort" on the State's behalf to deprive Martinez of a fair and impartial trial. *See Biagas v. State,* 177 S.W.3d 161, 176 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). As to curative measures, because the objection was made out of the jury panel's presence,

further attention was not called to the prosecutor's comment. Moreover, the jury charge specifically instructed the jury not to consider the defendant's failure to testify.[1] Additionally, during closing argument, defense counsel urged the jury to "take to heart the instructions that you cannot, you must not, consider at all that the accused in this case did not testify, because to do that would be improper." Finally, considering all the evidence, it is not likely that the verdict would have been different had the statement not been made. Although the defense attempted to discredit their testimony, A.A. and S.M. provided the jury with details of the abuse perpetrated by Martinez. Furthermore, Dr. Kellogg explained the girls' delay in reporting the abuse, stating that victims of sexual abuse often wait years to outcry for fear of what will happen when they do.

Because an instruction to disregard would have cured any harm resulting from the prosecutor's statements, the trial court did not abuse its discretion in denying the motion for mistrial. *Young*, 137 S.W.3d at 70. Martinez's first issue is overruled.

## 2. *Denial of Assistance of Counsel During Voir Dire*

Martinez next argues that he was denied the effective assistance of counsel during voir dire, or, actually, any assistance of counsel during voir dire, when the jury panel from which Martinez's jury was chosen went through an earlier voir dire process in which his attorney did not participate.

---

[1] The jury charge provided the following instruction: "Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the defendant has elected not to testify. That fact cannot be taken as a circumstance against him. You are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the defendant."

A hearing was held on Martinez's motion for new trial, during which he asked the trial court to take judicial notice of the fact that two juries were picked from the same panel and that Martinez's jury was the second jury picked from that panel.

In Atascosa County, one jury pool is called to choose juries for different trials. Here, on October 30, 2006, one jury panel participated in voir dire for two trials. First, the entire jury panel sat through voir dire for a sexual assault case. Then, after both sides made their strikes and selected a jury for that case, Martinez's counsel and the same prosecutor conducted voir dire of the remaining veniremembers and selected a jury for Martinez's trial. For the first time on appeal, Martinez contends that because his attorney did not participate in the first voir dire the veniremembers went through, he was denied the ability to question prospective jurors, make challenges for cause, and attempt to rehabilitate jurors the State challenged.

Martinez acknowledges that there is "not much law on this issue, and none directly on point." He does, nonetheless, rely on *Linnell v. State*, 935 S.W.2d 426, 428 (Tex. Crim. App. 1996), to emphasize that the right to be represented by counsel encompasses counsel's right to question the members of the jury panel in order to exercise his preemptory challenges. *Linnell*, however, is distinguishable from the instant situation because it involved the issue of interim jury service. *Id.* at 430. Martinez also relies on authority standing for the proposition that counsel's non-participation at trial amounts to ineffective assistance of counsel. *See, e.g., Cannon v. State*, 252 S.W.3d 342, 350 (Tex. Crim. App. 2008) (holding that defense counsel's refusal to participate in trial denied defendant his right to effective assistance of counsel).

The State responds that the practice of re-using veniremembers not chosen during prior voir dire questioning is necessary, common, and appropriate. In Atascosa County, all juries are chosen from the same pool in front of the attorneys who are waiting to go to trial during that docket. Questioning is openly conducted, and although an attorney not representing a party in the case may not ask questions, the attorney may observe questioning and then address any pertinent issues during his client's voir dire of the same jury pool. In fact, Martinez's counsel did just that. The record reflects that trial counsel was present during the earlier voir dire: "I know that it's been a long day because although I may not have had an active part in the first jury selection[,] I have been here right along with you since 8:45 this morning. I know that you are tired because I'm tired." Moreover, trial counsel used knowledge gained during the first voir dire to direct his questioning during the voir dire for Martinez's case: "But the benefit of having listened to what happened this morning when they asked you those questions and not have to ask them again is I know the answer to them. Let me make sure I understand correctly [addressing a veniremember]. Did you earlier say in the first trial you could not be fair to both sides?" The State also asserts that Martinez is not entitled to participate in the jury selection of another defendant's trial. We agree. During the voir dire for his *own* trial, Martinez had the ability to question the panel, make challenges for cause, and attempt to rehabilitate challenged jurors; therefore, he cannot complain that he was denied the right to intelligently exercise preemptory challenges and challenges for cause during the voir dire for his case. Martinez was well represented by counsel during his entire trial, including voir dire, and therefore cannot demonstrate that he was denied the right to effective assistance of counsel. Accordingly, we overrule Martinez's second issue.

### 3. *Admission of Prior Consistent Statement under Rule 801(e)(1)(B)*

CPS investigator Bernard Hernandez testified that he interviewed S.M. in October of 2004 after she accused Martinez of assaulting her; the State then attempted to introduce an audio recording of the interview. Martinez objected because he had not heard the audiotape, and the trial court reserved its ruling. Later, after reviewing the audiotape, the defense reurged its objection; the following exchange occurred at the bench outside the jury's presence:

Defense: [W]e do have an objection with regard to the admission and that is we object to it as being cumulative and bolstering. The best evidence has been so far the victim has come here herself to testify. In addition to that, the CPS worker has provided his testimony about what is reflected on the audiotape and there is nothing different, inconsistent or supplemental than what the complainant has testified to. So we believe the audiotape is cumulative so we object to it.

State: The State's position is, Judge, that on cross-examination of S.M. he elicited questions that left the impression to the jury that she fabricated or provided a different story to the jury in her testimony on Monday than she originally gave to the police and to CPS back when this was originally outcried. This tape is to rebut that impression.

Defense: That exception talks about when it's used to rebut an express or implied recent fabrication or improper influence. There is nothing recent about fabrication or undue influence. The testimony she gave is her recollection of what happened in October 2004. There is nothing that she said today that's of any recent effect. I think counsel is misapplying that statute and relying on it to bolster the evidence in this case. Clearly the jury has the benefit of judging the credibility of this witness because they heard her in court.

The trial court overruled the objection and the audiotape was played for the jury immediately before the State rested its case.

***Applicable Law***

Rule 801(e)(1)(B) imparts nonhearsay status to prior consistent statements of a witness "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." TEX. R. EVID. 801(e)(1)(B). The Texas Court of Criminal Appeals has recently recognized the following requirements that must be met for prior consistent statements to be admissible:

> (1)    the declarant must testify at trial and be subject to cross-examination;
>
> (2)    there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent;
>
> (3)    the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony; and,
>
> (4)    the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.

*Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007). To determine whether the cross-examination of a witness makes an implied charge of recent fabrication or improper motive, we focus on the "purpose of the impeaching party, the surrounding circumstances, and the interpretation put on them by the [trial] court." *Id.* at 808. We examine the totality of the questioning, giving deference to the trial judge's assessment of tone, tenor, and demeanor, and ask whether a reasonable trial judge could conclude that the cross-examiner is mounting a charge of recent fabrication or improper motive. *Id.* at 808-09.

We review the trial court's determination that a prior consistent statement is admissible because the cross-examination suggested or implied an assertion of recent fabrication or improper motive for an abuse of discretion. *Id.* The trial court's decision will be upheld if it is within the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 390-92 (Tex. Crim. App. 1991) (op. on reh'g).

### *Analysis*

Martinez claims that the State moved to introduce the recorded statement to refute the defense theory that S.M. falsely accused Martinez to get back at him for telling her mother she was dating a boy her mother had forbidden her from seeing. He relies on *Haughton v. State* to support his position that the admission of the audiotape was erroneous because S.M.'s motive to lie arose *before* the CPS statement was recorded. *See Haughton v. State*, 805 S.W.2d 405, 407-08 (Tex. Crim. App. 1990) (holding that child's video statement to CPS made *after* the alleged motive to fabricate arose did not rebut allegation of improper influence or motive, and was therefore not admissible as a prior consistent statement under Rule 801(e)(1)(B)). Following the holding in *Haughton*, Martinez is correct that the recorded statement could not be admitted to refute the suggestion that S.M. falsely accused Martinez because S.M.'s alleged motive to lie arose *before* the CPS statement was recorded. The State conceded at oral argument that the audiotape could not be admitted pursuant to *Haughton*, but argued alternatively that Martinez opened the door to the admission of the prior consistent statement when through cross-examination he 1) intimated that S.M. had been coached by the prosecutor and 2) "elicited questions that left the impression to the jury that she fabricated or provided a different story to the jury in her testimony on Monday than she

originally gave to the police and to CPS back when this was originally outcried." Here, a review of the record shows that on at least two occasions, the defense intimated that S.M. had been coached in her testimony by the prosecutor both immediately before and during trial. Although the defense questioning could be characterized as merely challenging S.M.'s credibility, we also recognize that we must defer to the trial court, who is able to observe "the tone and tenor of the questioning, combined with the cross-examiner's demeanor, facial expressions, pregnant pauses, and other nonverbal cues." *Hammons*, 239 S.W.3d at 808. "There is no bright line between a general challenge to memory or credibility and a suggestion of conscious fabrication, but the trial court should determine whether the cross-examiner's questions or the tenor of that questioning would reasonably imply an intent by the witness to fabricate." *Id.* at 805. Because Rule 801(e)(1)(B) sets forth a "minimal" foundation requirement of an implied or express charge of fabrication or improper motive, the trial court's decision was not outside the zone of reasonable disagreement. *Id.* at 804; *see also Montgomery*, 810 S.W.2d at 390-92. Under *Hammons*, which we are constrained to follow, we cannot conclude that the trial court abused its discretion in admitting the recorded statement. Martinez's third issue is overruled.

### CONCLUSION

The judgments of the trial court are affirmed.

Phylis J. Speedlin, Justice

Publish