



## MEMORANDUM OPINION

No. 04-10-00387-CR

Erik Vasquez **TREJO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR5084
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  July 6, 2011

AFFIRMED

Appellant Erik Vasquez Trejo appeals his conviction for the murder of Freddy Carvajal.

Trejo raises four issues: (1) the evidence was legally insufficient to support his conviction

because he conclusively established self-defense; (2) the trial court erred by instructing the jury

that Trejo's defensive theory was nullified if he provoked the difficulty; (3) under the rule of

optional completeness, the trial court abused its discretion in excluding his video-recorded

statements to the police; and (4) the State impermissibly commented on his invocation of his

privilege against self-incrimination during closing argument. We affirm the trial court's judgment.

## BACKGROUND

During the early morning hours of May 24, 2007, Trejo shot Eddie Carvajal twice in the back of the head from the backseat of Trejo's white Cadillac. Earlier in the evening, Carvajal and his girlfriend, Melinda Autobee, were driving in Autobee's Mustang between Floresville and San Antonio trying to find methamphetamine for Carvajal's cousin Jesse, who had given Carvajal $1,500 to buy the drugs. Carvajal gave the money to another connection, Henry Cadena, who gave the money to Trejo to make the purchase. Trejo and his purported drug connection, Angelo Gaona, conspired to steal the $1,500 and not deliver any drugs.

Later in the evening, Carvajal, Autobee, and Cadena met up with Trejo and Trejo's friend Chris McDonald at a car wash in San Antonio. Carvajal got out of Autobee's Mustang, approached Trejo, and told him that he (Carvajal) would need Trejo to either give him his Cadillac or accompany him back to Jesse to explain what had happened to the money. Carvajal volunteered to drive Trejo in his Cadillac to go see Jesse. Trejo and McDonald got in the backseat of the Cadillac, and Autobee and Cadena followed in the Mustang. After a few minutes of driving on the highway, Carvajal exited, departing from the route to Jesse's house in Floresville.

The two cars stopped on a nearby road. Autobee got out of the Mustang and walked toward the Cadillac. McDonald got out of the backseat of the Cadillac and took off running. As Autobee approached the driver's side of the Cadillac, Carvajal peeled out backward and sped away. Because the Mustang was almost out of gas, Autobee and Cadena stopped at a nearby gas station. While getting gas, Autobee received a call from Carvajal. Autobee heard Carvajal say,

"Melinda, I love you," and a scuffling sound before the phone went silent. Autobee called back, but Carvajal's phone went directly to voicemail.

The next morning, another motorist found Carvajal's body in the middle of a street in San Antonio. Trejo was indicted for the murder of Carvajal and, after a jury trial, was convicted. He appeals his conviction.

## LEGAL SUFFICIENCY

Trejo raised self-defense at trial. "A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory." *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Because the jury in this case rendered a guilty verdict, it implicitly rejected Trejo's self-defense theory. *See id.* Trejo argues that the evidence at trial was legally insufficient to support this implicit finding because he conclusively established that he killed Carvajal in self-defense.

### A. Standard of Review

In resolving a legal sufficiency challenge to a jury's implicit rejection of a defendant's claim of self-defense, we must determine whether "any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Id.*; *see also Miranda v. State*, No. 04-10-00015-CR, 2011 WL 1496539, at *5 (Tex. App.—San Antonio Apr. 20, 2011, no pet. h.). We "view[] all the evidence in the light most favorable to the prosecution." *Saxton*, 804 S.W.2d at 914; *see also Miranda*, 2011 WL 1496539, at *5. "Defensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence." *Saxton*, 804 S.W.2d at 914; *see also Miranda*, 2011 WL 1496539, at *5.

**B. Self-Defense**

Under the law applicable to this case,[1] a person is justified in using deadly force in self-defense if: (1) a reasonable person in his situation would not retreat; and (2) he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of aggravated kidnapping or robbery. *See* TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a) (West 2003); *Vasquez v. State*, 2 S.W.3d 355, 358 (Tex. App.—San Antonio 1999, pet. ref'd). Trejo did not testify at trial to any of the events that occurred after McDonald jumped out of the Cadillac. He claims that the evidence of the events leading up to Carvajal's speeding away with him in the backseat conclusively establishes both the reasonable belief that deadly force was immediately necessary and that his failure to retreat was reasonable.

We disagree. Autobee testified that at various points throughout the night, Carvajal did not have or obtain a gun. She also testified that Carvajal did not use any force or threaten Trejo when asking for his Cadillac or his company. Similarly, there is no evidence that Trejo disavowed his responsibility for losing the $1,500 or objected when Carvajal asked Trejo for his Cadillac or for Trejo to go explain to Jesse what had happened. Moreover, Gaona testified that he and Trejo conspired to make off with the drug money. Although Trejo asserts that Autobee testified that there was no time for Trejo to get out of the Cadillac, Autobee never testified to this. Rather, she testified that McDonald was able to get out of the driver's side of the backseat and take off running before she approached the Cadillac and that, when she approached the driver's side of the Cadillac and Carvajal peeled out, Trejo was still sitting in the passenger's side of the backseat.

---

[1] The parties agree that the 2005 version of the Texas Penal Code, which required the defendant to not be reasonably able to retreat, is the applicable law governing this case.

A rational jury could have found beyond a reasonable doubt from this evidence, viewed in the light most favorable to the prosecution, that it would have been reasonable for Trejo to get out of the Cadillac. A rational jury also could have found that Trejo did not reasonably believe that shooting Carvajal was immediately necessary to prevent his robbery or kidnapping. *See* TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a); *Saxton*, 804 S.W.2d at 914. We therefore overrule Trejo's legal sufficiency challenge.

### JURY INSTRUCTION

Trejo argues that the trial court improperly submitted a jury instruction, over his objection, regarding his provocation of Carvajal because there was no evidence to support the instruction. He argues that, as a result, the trial court "stripped him of his defense."

### A. Standard of Review

A trial court should give an instruction on provoking the difficulty only if "a rational jury could find every element of provocation beyond a reasonable doubt." *Smith v. State*, 965 S.W.2d 509, 514 (Tex. Crim. App. 1998). In viewing the evidence in the light most favorable to the trial court's decision to include the instruction, we must determine whether "there was sufficient evidence from which a rational jury could have found provocation beyond a reasonable doubt." *Id.*

### B. Provoking the Difficulty

A defendant's use of force in self-defense is not justified if the defendant provoked the victim's use of unlawful force. *See* TEX. PENAL CODE ANN. § 9.31(b)(4) (West 2003). A provocation instruction is necessary if a rational jury could find beyond a reasonable doubt that: (1) the defendant's acts provoked the attack on him; (2) the acts were reasonably calculated to provoke the attack; and (3) the defendant acted with the purpose and intent that the victim's

response attack give him "a pretext for inflicting harm upon the other." *See Smith*, 965 S.W.2d at 513. Each element is a fact question and may be established by circumstantial evidence. *Id.* at 513–19.

Trejo contends that he shot Carvajal in response to Carvajal's alleged attempted robbery or kidnapping. Autobee testified at trial, and Trejo does not dispute, that Trejo's loss or theft of the $1,500 caused Carvajal to ask for Trejo's Cadillac or for Trejo to accompany him to see Jesse. Gaona testified that he and Trejo conspired to steal the drug money and faked Gaona's robbery to convince Carvajal that Trejo no longer had the money. Ernest Martinez, a man whom Trejo had called after he shot Carvajal, testified that Trejo told him that he (Trejo) had shot Carvajal and that "it felt good" to kill him.

From this evidence, a rational jury could have found beyond a reasonable doubt that Trejo's theft of the drug money and telling Carvajal that the drug money had been stolen was reasonably likely to cause and did cause Carvajal to have Trejo accompany him to see Jesse, and that Trejo consented to accompanying Carvajal to have a pretext for harming him to further his attempt to steal the drug money. Thus, the trial court properly included the provocation instruction, and we accordingly overrule this issue. *See id.*

### VIDEOS OF TREJO'S POLICE STATEMENTS

Trejo also contends that the trial court erred in excluding video recordings of his police statement. He argues that although the videos contained hearsay, they were admissible under the rule of optional completeness.

**A. Standard of Review**

We review a trial court's ruling excluding evidence for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court abuses its

discretion when its ruling lies outside the zone of reasonable disagreement. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007).

## B. Rule of Optional Completeness

If a party introduces part of a recorded statement into evidence, then "the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence." TEX. R. EVID. 107. This rule sets forth two requirements: (1) some part of the evidence sought to be admitted in whole must be actually admitted by the opposing party; and (2) the proponent of the evidence must show that the remainder of the evidence offered is necessary to fully understand or explain the matter. *Mendiola v. State*, 61 S.W.3d 541, 545 (Tex. App.—San Antonio 2001, no pet.) (citing *Washington v. State*, 856 S.W.2d 184, 186 (Tex. Crim. App. 1993)); *Araiza v. State*, 929 S.W.2d 552, 556 (Tex. App.—San Antonio 1996, pet. ref'd).

Trejo argues that the trial court should have admitted the videos because Detective Manuel Nunoz, who interviewed Trejo twice about the events leading up to Carvajal's death, testified that Trejo was nervous and evasive during the first interview but not during the second interview. However, the State did not admit any part of either video-recorded statement, and Detective Nunoz did not testify to any particular statements that Trejo made during either interview. Moreover, Detective Nunoz's testimony as to Trejo's mannerisms during each interview was elicited by counsel for Trejo during cross-examination; it was not elicited by the State. Thus, the rule of optional completeness was not invoked. *See Araiza*, 929 S.W.2d at 556 (explaining that a mere reference to a document does not invoke the rule of optional

completeness). Because the trial court's ruling excluding the video recordings was not an abuse of discretion, we overrule this issue.

**MOTION FOR MISTRIAL**

Finally, Trejo contends that the State impermissibly commented on his privilege against self-incrimination during closing argument. Specifically, Trejo complains of the following statement by the prosecutor:

> The other thing to keep in mind, the Defendant knew that he got his car back and items of evidence were removed. He knew where the body was. He knew his cell phone records tied him to the body. He knew all these things. Didn't want to cooperate with the police. What would a reasonable person do? What did the other witnesses do? They all came forward. And he made a big deal about Melinda and Jesse not wanting to come in, hey, but they talked and they talked pretty close to the day after the murder. Every witness was cooperating, except one person.

The State counters that the prosecutor's statements were directed at Trejo's pre-arrest silence, and, even if the comments were directed at Trejo's post-arrest silence, the error was harmless.

## A. Standard of Review

We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). We may reverse only if the trial court's ruling is outside the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

## B. Comment on Trejo's Pre-Arrest Silence

A prosecutor's comment in closing arguments on the defendant's failure to testify "violates the privilege against self-incrimination and the freedom from being compelled to testify contained in the Fifth Amendment of the United States Constitution and Article I, § 10, of the Texas Constitution." *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). If the State improperly comments on the defendant's failure to testify, we analyze: (1) the severity of

the misconduct; (2) the efficacy of curative measures; and (3) the certainty of whether the defendant would have been convicted without the misconduct. *Martinez v. State*, 276 S.W.3d 75, 79 (Tex. App.—San Antonio 2008, pet. ref'd). Relevant to our inquiry is whether the prosecutor intended her statements to direct the jury's attention to the defendant's failure to testify. *Id.* at 78–79. Except in the most "blatant" instances, the potential harm caused by a comment regarding a defendant's failure to testify ordinarily is remedied by an instruction to disregard. *Moore v. State*, 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999).

During closing arguments, the State did not directly comment on Trejo's failure to testify. Rather, the State referred to Trejo's initial unwillingness (prior to his arrest) to talk with the police about the events on the night Trejo shot Carvajal. When Trejo objected to the State's comment that Trejo initially refused to cooperate with the investigation, the prosecutor responded that he made no direct comment on Trejo's refusal to testify, and that any suggestion to the contrary was unintentional. The trial court sustained Trejo's objection to the prosecutor's argument and immediately instructed the jury to disregard the prosecutor's comment. Even assuming it was improper for the State to comment on Trejo's pre-arrest lack of cooperation, we must determine "whether an instruction to disregard would have cured any harm or prejudice resulting from the improper remark." *Martinez*, 276 S.W.3d at 79; *see Waldo v. State*, 746 S.W.2d 750, 755 (Tex. Crim. App. 1988) (explaining that instruction to disregard can cure harm caused by comment on pre-arrest silence).

The alleged misconduct in this case was slight. The comments were made during closing argument when the prosecutor was providing a summation of admitted evidence. The prosecutor was pointing out the relative cooperation of other witnesses with the lack of assistance afforded by Trejo who admitted to shooting Carvajal under a self-defense theory. Detective Nunoz

testified, without any objection, that the first few times he attempted to contact Trejo, Trejo avoided him and refused to give a statement. The prosecutor's comment was brief and not repeated. The comment did not demonstrate any "willful or calculated effort" on the State's behalf to deprive Trejo of a fair and impartial trial. *Martinez*, 276 S.W.3d at 79. The prosecutor indicated that there was no intent to comment on the failure of Trejo to testify at trial, and the trial court provided a curative instruction. Finally, as our previous review of the evidence indicates, it is not likely that the verdict would have been different had the statement not been made.

Because the trial court's curative instruction would have cured any harm resulting from the prosecutor's statement, the trial court did not abuse its discretion in denying the motion for mistrial. We, therefore, overrule Trejo's final issue.

## CONCLUSION

Finding no reversible error, we affirm the judgment of the trial court.

Rebecca Simmons, Justice

DO NOT PUBLISH