Ralph BARBA, Jr., Appellant

v.

The STATE of Texas, Appellee

No. 06–15–00052–CR

Court of Appeals of Texas, Texarkana.

Submitted: January 19, 2016

Decided: March 10, 2016

Don Biard, McLaughlin,Hutchison & Biard LLP, Paris, TX, for appellant.

Val Varley, Red River County & District Attorney, Clarksville, TX, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

On June 19, 2014, Ralph Barba, Jr., was indicted for the first degree felony offense of continuous sexual abuse of a young child.[1] A jury found Barba guilty of the offense and assessed his punishment at life imprisonment. In his sole point of error on appeal, Barba contends that the trial court abused its discretion by failing to grant a mistrial when the State repeatedly made comments regarding confessions in criminal cases during jury voir dire proceedings. We affirm the trial court's judgment.

## I. Introduction

The State's indictment alleged that Barba sexually abused his stepdaughter over a period of more than thirty days during the months of October and November 2013 by touching her genitalia and by having her touch his genitalia.[2] Voir dire proceedings began on March 16, 2015. During the State's voir dire examination, Barba objected multiple times to the State's repeated references to a confession, arguing that the comments violated his Fifth Amendment right to choose not to testify

---

1. *See* TEX. PENAL CODE ANN. § 21.02 (West Supp.2015).

2. Barba does not challenge the sufficiency of the State's evidence against him; therefore, we will dispense with a lengthy recitation of the factual background as it is unnecessary to resolve the sole issue before us.

at trial.[3] Initially, the trial court overruled Barba's objections; however, after the State continued to refer to the word "confession," the trial court sustained Barba's objections and issued instructions to the jury regarding the State's comments.

Based on the same grounds, Barba asked for a mistrial during voir dire proceedings, and he re-urged his motion two times during the guilt/innocence phase of the trial. In response to Barba's motions for mistrial, the State argued that its references to the word "confession" were intended to educate the jury on different types of evidence one might expect to see in a sexual assault case and to determine what type of evidence a potential juror would expect the State to provide in order to return a guilty verdict. Pointing out that it discussed confessions as one of several types of evidence typically seen in sexual assault cases, the State argued that its statements and questions were "not . . . comment[s] on whether someone testifie[d] or not." The trial court denied Barba's motions for mistrial.

Eventually, a jury was chosen, and the following day, the guilt/innocence phase of the trial began. The jury convicted Barba of the charged offense and then determined that he should serve life in prison. Barba timely filed this appeal.

## II. Factual Background

### A. Voir Dire Proceedings

The State made several references to confessions during voir dire examination. To understand the parties' arguments, it is necessary to review the context in which the State made those statements. The State first referenced confessions when asking veniremembers to discuss their expectations of how a child victim might behave when testifying at trial. The State said, *"They may get up there and freeze up. They may get up there and bawl. I've had that happen. They may get up there and act totally normal. I've had that happen, and then the defendant later confessed to doing it."* [4]

Next, the State referred to two well-known television shows based on crime and courtroom drama. The State commented that it had the burden to provide evidence during trial along the same lines as the actors do on television. The State then asked what type of evidence the veniremembers might expect the prosecution to provide during a sexual abuse of a child case.

*Possible eyewitnesses? How about DNA, everybody loves DNA these days, right? How about medical evidence? Go to a doctor, and a doctor says, oh, yeah, we've got all these issues here. How about a video of the offense? Oh, I'd love to have that, right? All right. How about a confession?* [5]

In addition, the State explained at length that eyewitnesses, physical evidence, and medical testimony are sometimes difficult to produce in a case involving a child, an adult, and the offense of sexual assault. The State asked, *"And we talked a little bit about a video of an offense or a confession, does anybody think we're going to have these?"* The State continued by discussing the possibility of using technological evidence, such as cell phones. It then explained to the

---

**3.** The Fifth Amendment to the United States Constitution states, "No person . . . shall be compelled in any criminal case to be a witness against himself." *See* U.S. CONST. amend. V.

**4.** The comments Barba complains of appear in italics.

**5.** Immediately following this question, the State asked, "Maybe, maybe no?"

veniremembers that technological evidence is sometimes unavailable because it can be easily destroyed.

Moving on with its examination, the State began, *"Usually if there's a confession, a lot of times we'll have the defendant—."* At that point, Barba objected, stating, "Your Honor, this is about the sixth time he's talking about confessions. It's a reference to—it's a reference about the defendant's right to remain silent. It has no place in this case, but it's just a repetitious matter now that violates my client's constitutional right not to have it referred to." The trial court overruled Barba's objection. The State continued, *"And if we were to have a confession, the defendants, what do they normally try to do with confessions?"* Again, Barba objected. This time, the trial court sustained his objection.

Barba asserted that the State's comments were prejudicial, and he asked the trial court to instruct the veniremembers to disregard anything the State had said relating to a confession or his "right to remain silent." The trial court gave the veniremembers its instructions. Barba then said, "I'm asking you to tell them to disregard all of that, that Mr. Varley has said to them." The trial court stated that it would "tell them once again, what the lawyers say is not evidence, and I've given them an instruction on what his Fifth Amendment right is." Arguing that he could not get a fair trial due to the State's comments, Barba asked the court for a mistrial. The trial court declined to make a ruling and stated it would carry Barba's motion.

The State continued, *"So if we don't have eyewitnesses, we don't have DNA, and if we didn't have medical, and I'm not talking about this case, I'm talking about any case in general on all this stuff, if we didn't have a confession, and—."* Again,

Barba objected to the State's reference to a confession, which the trial court sustained. The State continued, "If we didn't have any of those things, what would we be left with?" A veniremember responded "One's word against the other," which was met with agreement by other veniremembers. Voir dire proceedings continued that day, a jury was chosen, and the trial was set to begin the following day.

## B.   Guilt/Innocence Phase of Trial

On the day of trial, but before the jury had been sworn, Barba re-urged his motion for mistrial outside the presence of the jury. After reminding the trial court of his arguments the previous day, Barba stated that, in his opinion, the trial court's instructions to the veniremembers failed to cure the prejudicial damage caused by the State's comment. The State responded in the same manner as it had done the day before. The trial court once again denied the motion for mistrial.

Following the close of evidence, but before the trial court read its instructions to the jury, Barba re-urged his motion for mistrial once again. After receiving permission from the trial court, Barba's counsel testified that the State's comments during voir dire had violated Barba's Fifth Amendment rights in such a detrimental way that it had significantly impacted his ability to effectively assist Barba as his trial counsel. In opposition to Barba's third motion for mistrial, the State re-urged the same arguments it previously had made. Following a brief statement from the trial court, Barba's third motion for mistrial was denied.

## III.   The Parties' Positions on Appeal

On appeal, Barba maintains that the evidence in the case consisted almost entirely of statements made by the alleged victim. Barba states that he neither made an in-

criminating statement regarding the allegations against him nor gave a confession. Due to the complete lack of any evidence regarding a confession, Barba contends that the State's irrelevant references to a confession "unduly prejudiced the jury and effectively deprived [him] of his ability to exercise his Fifth Amendment right not to testify at trial." In other words, the State's comments put Barba in a position where he felt compelled to testify in order to defend himself against a potential juror's belief in a non-existent confession. Based on this argument, Barba contends that the trial court abused its discretion when it refused to grant his motions for mistrial.

In response, the State argues that it was entitled to ask questions as to what type of evidence a potential juror would require in order to convict a person of sexual assault of a child. The State emphasizes that it not only mentioned evidence in the form of a confession, but it also referred to other types of potential evidence, including eyewitness testimony, DNA evidence, and video footage. Because its references were meant to prompt an "open-ended discussion" in order to discover the veniremembers' views, the State contends that its comments were appropriate and that, therefore, the trial court did not abuse its discretion when it denied Barba's motions for mistrial.

## IV. Standard of Review

■ We review a trial court's denial of request for a mistrial under an abuse-of-discretion standard. *Ocon v. State,* 284 S.W.3d 880, 884 (Tex.Crim.App.2009); *Sanders v. State,* 387 S.W.3d 680, 687 (Tex. App.—Texarkana 2012, pet. struck). We consider "the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon,* 284

S.W.3d at 884 (citing *Wead v. State,* 129 S.W.3d 126, 129 (Tex.Crim.App.2004)). If the ruling was within the zone of reasonable disagreement, it must be upheld. *Id.;* *Sanders,* 387 S.W.3d at 687. Mistrial is only an appropriate remedy when the error is highly prejudicial and incurable. *Ocon,* 284 S.W.3d at 884 (citing *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App. 2004)). "A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State,* 3 S.W.3d 547, 567 (Tex. Crim.App.1999). A mistrial is appropriate only "when the objectionable event is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Cano v. State,* 3 S.W.3d 99, 109 (Tex.App.—Corpus Christi 1999, pet. ref'd).

## V. Analysis

### A. The State's Questions Did Not Violate Barba's Fifth Amendment Rights

■ During a criminal prosecution, the State may not "comment on the failure of [the] accused to testify." *Bustamante v. State,* 48 S.W.3d 761, 764 (Tex.2001). Doing so "violates the privilege against self-incrimination and the freedom from being compelled to testify contained in the Fifth Amendment of the United States Constitution and Article I, § 10 of the Texas Constitution." *Id.* As an initial point, we find that the State's comments did not improperly refer to Barba's right not to testify because they occurred during voir dire before it was known whether Barba would testify or not. *See Godfrey v. State,* 859 S.W.2d 583, 585 (Tex.App—Houston [14th Dist.] 1993, no pet.) (holding that the prosecutor's voir dire statements about reasons why a defendant might elect not to testify were "not a comment on the

[defendant's] subsequent failure to testify ... because it was made *before* it was known whether or not [the defendant] would testify", citing *Campos v. State*, 589 S.W.2d 424, 426 (Tex.Crim.App. [Panel Op.] 1979); *see also Wilson v. State*, No. 06–02–00187–CR, 2003 WL 22144071, at *2 (Tex.App.—Texarkana Sept. 18, 2003, no pet.) (mem.op.) (noting that "several courts have held that a comment which occurs before testimony in a case has closed cannot be held to refer to a failure to testify which has not yet occurred"). Yet, even if a prosecutor's voir dire comments could constitute an improper reference to a defendant's election not to testify, the comments in this case were not improper.

▮▮▮ In determining whether a prosecutor's comments improperly refer to a defendant's election not to testify under the Fifth Amendment,

> the offending statement should be viewed from the jury's standpoint. The implication that the comment referred to the defendant's failure to testify must be clear; it is not enough that the statement may be construed as an indirect or implied allusion to the accused's failure to testify. "The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify."

*Martinez v. State*, 276 S.W.3d 75, 78–79 (Tex.App.—San Antonio 2008, pet. ref'd) (quoting *Bustamante*, 48 S.W.3d at 765). In *Martinez*, the State asked the panel during general voir dire, "Who on the panel thinks it means a lot to—do you think that the person who committed the offense is going to be that much more leery about perjury, swearing an oath and saying I didn't do this crime?" *Id.* at 78. Even though the statement could be construed as implying that Martinez might not testify

because he was afraid of committing perjury, the court of appeals found that the statement did not clearly refer "to Martinez's right not to testify." *Id.* at 79.

Here, the State did not refer to Barba's testimony or the reasons for his failure to testify at all. Rather, the State repeatedly identified confessions as one of several types of evidence that jurors might see in sexual assault cases in general. Accordingly, the State did not clearly refer to Barba's right not to testify, and the trial court did not abuse its discretion in denying Barba's motion for mistrial.

**B. The State's Comments Were Part of a Proper Area of Inquiry**

▮▮▮ Moreover, the State's comments were part of a proper area of inquiry. In this case, the State discussed several types of evidence jurors might expect to see in sexual assault cases, including DNA evidence, medical evidence, and eyewitness evidence, and then explained the many reasons why such evidence might not be available in sexual assault cases. The State then asked,

> [THE STATE]: If we didn't have any of those things, what would we be left with?
>
> VENIREPERSON ALLISON: One's word against the other.
>
> [THE STATE]: Who is that? No. 13?
>
> VENIREPERSON ALLISON: One's word against the other one's.
>
> [THE STATE]: Okay. One's word against the other.

The State then recapped its previous discussion before reaching its ultimate question:

> As we discussed, there are rarely eyewitnesses in an aggravated sexual assault, right? It usually boils down to a single witness, the complainant, right?

And her credibility. Now, the law allows me to prove my case through the testimony of just one witness, and I am entitled to a conviction based on that one witness as long as you believe I have carried my burden and proved the case beyond a reasonable doubt. Now, some people don't think that's right, perhaps the law should require at least two witnesses, and some people feel they will always need something more than just witness testimony. The question is, how many people would simply have to have something else before you could find a defendant guilty, and how many of you would not be able to convict on the testimony of one witness if I prove my case beyond a reasonable doubt through that one witness?

The law in Texas is clear that [i]t is proper for the State to ask during voir dire if jurors can convict on the testimony of one witness if the jurors believe that witness beyond a reasonable doubt on all of the necessary elements that establish an offense because a negative answer by a juror to the question makes the prospective juror challengeable for cause.

*Blackwell v. State*, 193 S.W.3d 1, 19 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Castillo v. State*, 913 S.W.2d 529, 533 (Tex.Crim.App.1995)). The State's reference to confessions in this case was merely part of a broad discussion designed to test the veniremembers' ability to follow the law. When viewed in its proper context, the State's questions were proper.

### C. Barba's Reliance on *Godfrey v. State* is Misplaced

Citing *Godfrey*, Barba argues that the State's comments about confessions result-

ed in a violation of his Fifth Amendment right to choose not to testify. *See Godfrey*, 859 S.W.2d at 585. In *Godfrey*, the State commented,

The judge told you a defendant does not have to testify in his own behalf and that is absolutely fine. Look at the position he is in. I think possibly this is the reason the law says in the United States Constitution he does not have to testify on his own behalf and the jury will be instructed to disregard it. That is important to the defense and me. We are looking for a fair jury that will follow the law. Look at his predicament a second: If he gets up here and testifies, he will say anything to save his hide, he will get up there and lie.

*Id.* at 584. Defense counsel objected, but the trial court overruled his objection. *Id.* The State continued, "But if he doesn't testify, he must be hiding something. So, the law says we are not going to put him in that predicament. He doesn't have to testify and you can't consider it." *Id.* On appeal, appellant argued that the trial court erred when it overruled his objections because the law as explained by the State, presumed that appellant was guilty and that, if he was forced to testify, he would be compelled to commit perjury to conceal his guilt. *Id.* Appellant maintained that the State's comments contradicted the law in the court's instructions requiring the jury to presume that appellant was innocent. *Id.*[6]

The appellate court found that the State's argument constituted error because it was "an incorrect statement of the law as to the reason the law allows a defendant to choose not to testify." *Id.* In determining whether the State's erroneous comments required reversal, the court identi-

---

**6.** In *Godfrey*, the State conceded that its comment was error, but argued that it was harm-    less. *Id.*

fied several factors to consider and stated, "The reviewing court should focus not on weight or other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the juror's decision-making. We do this, not by asking whether the jury reached the correct result, but by asking whether the jurors were able ... to properly apply the law to the facts." *Id.* The appellate court found that "[t]he statements made by the prosecutor in [the] case were extremely improper" and that because "the statement[s] prejudiced the decision-making process of the jury, appellant was essentially denied a fair trial." *Id.* at 586. The case was reversed and remanded to the trial court. *Id.*

Barba's reliance on *Godfrey* to support his claim that his Fifth Amendment right was violated is misplaced.[7] In *Godfrey,* the prosecutor directly referred to the appellant's Fifth Amendment right not to testify and the possible reasons he might exercise that right; i.e., that he would be forced to perjure himself. The prosecutor then incorrectly informed the venire panel that the avoidance of perjury was "possibly ...: the reason the law says in the United States Constitution *he* does not have to testify on *his* own behalf and the jury will be instructed to disregard it." *Id.* at 584 (emphasis added).

In this case, the State's comments relating to hypothetical confessions (1) were not misstatements of the law, (2) did not refer to the reasons Barba might choose not to testify, and (3) were not "extremely improper" statements. *See id.* at 586. As noted above, the State's comments were part of a larger discussion designed to test veniremembers on whether they could follow the law and convict on the testimony of one witness if they believed that witness had established all of the elements of the offense charged beyond a reasonable doubt. Unlike the State's questions in *Godfrey,* the State's questions here were proper and accurately stated the law. Accordingly, the State's comments could not have prejudiced the jury's decision-making process to such an extent that Barba was essentially denied a fair trial. *Id.*

### D. Summary

Because the State's reference to a nonexistent confession was part of a proper area of inquiry and because the State did not misstate the law or make improper comments, the State did not violate Barba's Fifth Amendment right not to testify. Barba's sole point of error is overruled.

## VI. Conclusion

We affirm the trial court's judgment.

---

**7.** Barba maintains that the facts of this case are similar to those in *Godfrey* because (1) the source of the error was an officer of the court, (2) the State continued with his line of argument after the trial court overruled his objection, (3) the statements confused and prejudiced the jury during deliberations, and (4) allowing the State to make such comments would encourage the same type of comments in the future. Here, the source of the error was an officer of the court, and he did make a reference to a hypothetical confession on one occasion after the trial court overruled Barba's objection; however, as we explain below, the differences in the two cases far outweigh the similarities.