

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00070-CR

DAVID MICHAEL CALHOUN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CR23-00333

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

David Michael Calhoun was convicted of thirteen felonies: seven counts of aggravated assault on a member of Calhoun's family or household,[1] four counts of sexual assault against a person with whom he was prohibited from engaging in sexual relations,[2] one count of aggravated sexual assault of a child,[3] and one count of aggravated assault by occlusion on a member of his family or household.[4] The victims were three young men.

On appeal, Calhoun argues that the trial court erred when it (1) failed to strike the State's expert witness[5] after it was discovered that the expert gave an interview to a local reporter and (2) failed to sustain Calhoun's objection to expert testimony during punishment about an incident involving Calhoun that occurred while he was in jail. Because we find that the trial court did not commit error, we affirm the trial court's judgments.[6]

---

[1]*See* TEX. PENAL CODE ANN. § 22.02 (Supp.). Calhoun was sentenced to life imprisonment on five of these counts and twenty years' on the other two.

[2]*See* TEX. PENAL CODE ANN. § 22.011(f)(1) (Supp.). Calhoun was sentenced to life imprisonment on each of these counts, with three of them ordered to run consecutively to other counts.

[3]*See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B). Calhoun was sentenced to life imprisonment on this count, with the sentence ordered to run consecutively to that of another count.

[4]*See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (Supp.). Calhoun was sentenced to ten years' confinement on this count.

[5]Alternatively, Calhoun complains that the trial court erred by failing to grant a mistrial but does not discuss, argue, or present authorities for this complaint in his brief. *See* TEX. R. APP. P. 38.1(i). More importantly, he never asked the trial court to grant a mistrial. *See* TEX. R. APP. P. 33.1. As a result, we overrule this unpreserved complaint.

[6]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## I.    Background

Over four days of trial, the State presented testimony of horrible abuse inflicted on three young men by Calhoun.[7]  The abuse included beatings and torture with brass knuckles and a cattle prod, starvation, and assault by occlusion.  Additionally, one victim was forced to eat dog and human feces, and one boy was frequently "hog-tied" using zip ties as restraints.  Most of the allegations had to do with child-complainant Braxton, who ran away from Calhoun and was subsequently found in Nebraska.[8]

The State presented expert testimony from Pamela Miller, a licensed attorney with a master's degree in clinical social work.  Miller was an expert in the field of child torture.  She was exempted from the rule and watched the testimony of the three victims as well as the other witnesses, two of whom were co-defendants.  Miller testified on the second day of trial about the characteristics and phenomena common to child torture.

---

[7]To the extent we need to discuss or summarize parts of the record, we will use pseudonyms to protect the identity of any witness or complainant who was a child at the time of the events described.  *See* TEX. R. APP. P. 9.10(a)(3).

[8]Much of the initial investigation into Braxton's history of abuse was done by professionals in Nebraska.  Some of their descriptions of Braxton's disclosures are as follows:

- Because of the circumstances under which Braxton was found, law enforcement initially suspected he was a victim of human trafficking.  Jayme Buckley, a forensic interviewer at the BraveBe Child Advocacy Center in Lincoln, Nebraska, interviewed Braxton five times.  Buckley testified, "I have been in a professional role for the past nine years investigating child abuse, listening to a thousand plus disclosures, and in my current role interviewing victims of human trafficking, and I've never, ever heard anything like what [Braxton] shared with me (teared up)."

- Ashley Harris, a nurse practitioner and sexual assault nursing examiner, described Braxton's injuries, scars, and descriptions of abuse as "the most severe case [she had] ever seen, and [she had] been doing this work since 2016."

- Christina Worster, an investigator for Homeland Security, called Braxton's case "the worst case of child abuse, child sexual abuse [she had] ever investigated, bar none."

3

The day after her testimony, Miller gave an interview to a local television reporter. A copy of that interview was not included in the appellate record. Calhoun told the trial court that Miller was "downstairs in front of a camera" and stated that it looked "like a news crew." He asked the trial court to strike Miller's testimony from the record and argued that it should not be considered by the jury. The trial court denied Calhoun's request. However, the trial court did admonish Miller that it was "bad practice for [Miller] to give an interview before trial [wa]s over" and instructed her to not give further media comments until the trial concluded.

For her part, Miller told the trial court that her comments to the media concerned the phenomenon of child torture and that she gave no "information about the children or the abuse [they suffered] or things like that." She added, "I may have said a couple of things about the Defendants, but nothing about the children, nothing about what happened to them."

## II.     Trial Court's Refusal to Strike Miller's Testimony Was Not Error

The trial court's refusal to strike Miller's testimony is the subject of Calhoun's first point of error.

### A.     Standard of Review

The trial court's denial of a motion to strike testimony is a ruling on the admission or exclusion of evidence and, hence, reviewed for an abuse of discretion. *See Aguilar v. State*, 739 S.W.2d 357, 358–59 (Tex. Crim. App. 1987); *see also Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (citing *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999)). "As long as the trial judge's ruling was within the 'zone of reasonable disagreement,' it will not

be disturbed on appeal." *Irsan v. State*, 708 S.W.3d 584, 611 (Tex. Crim. App. 2025) (quoting *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018)).

A trial court abuses its discretion when its "decision falls outside the zone of reasonable disagreement," that is, when the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)). "If the ruling was within the zone of reasonable disagreement, it must be upheld." *Barba v. State*, 486 S.W.3d 715, 720 (Tex. App.—Texarkana 2016, no pet.) (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)).

## B.    Analysis

The trial court did not abuse its discretion in denying Calhoun's motion to strike Miller's testimony. Calhoun has presented no authority, and we have found none, to compel that result. The trial court's ruling was clearly a discretionary matter. Most cases involving media concerns in this vein have to do with motions for change of venue. *See Brimage v. State*, 918 S.W.2d 466, 507–09 (Tex. Crim. App. 1994) (op. on reh'g). In *Brimage*, "[t]he record show[ed] there was heavy media coverage of both the pretrial proceedings and the trial itself." *Id.* at 508. In fact, the trial court sua sponte ordered a change of venue. *Id.*

Here, there is no evidence that any member of the jury saw or heard any of Miller's comments to the media, and Calhoun made no attempt to question any of the jurors. *See id.* at 509 ("No evidence is presented that the media activity prejudiced the jury or any member of the jury against appellant."). Moreover, we count at least thirteen occasions where the trial court

5

instructed the jury to abstain from any news, television, or radio coverage of the trial. "[W]e generally presume that a jury will follow the judge's instructions." *Irsan*, 708 S.W.3d at 627 (quoting *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009)).

Having found no abuse of discretion on the part of the trial court, we overrule Calhoun's first point of error.

## III. Calhoun's Arguments Regarding Witness Testimony Were Not Preserved

Calhoun's second point of error also concerns testimony from Miller, this time at the punishment phase of trial. Calhoun complains that the trial court erred when it allowed the jury to hear testimony from Miller regarding an incident involving Calhoun at the jail.

During her punishment testimony, Miller described how Calhoun, during his pretrial incarceration, "targeted . . . a teenager." Calhoun objected, as follows: "I'm going to . . . object to that -- this testimony. It's not been -- it's not been placed into evidence or anything that she could testify about." The State responded that it could "ask [Miller] how she ha[d] become familiar with this," and Calhoun offered no reply. Five questions later, Miller testified, "So I learned that [Calhoun] started abusing and controlling a young person in the jail." Calhoun objected: "I'm going to reurge my objection . . . . I believe the prejudicial effect of it outweighs the probative value here at this sentencing -- at this punishment phase of the trial, Your Honor."

### A. No Hearsay Objection

On appeal, Calhoun complains that Miller's description of the information she had learned was hearsay. "[I]t is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial." *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim.

6

App. 2004); *see Thomas v. State*, 226 S.W.3d 697, 704–05 (Tex. App.—Corpus Christi–Edinburg 2007, pet. dism'd) (an objection that information was "not relevant" and "unfairly prejudicial" did not preserve an appellate complaint that the testimony was hearsay); *Lopez v. State*, 200 S.W.3d 246, 255 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding that an objection that a statement was hearsay, prejudicial, and double hearsay did not preserve a Confrontation Clause complaint for appellate review).

Calhoun's only objection to the trial court was that it had " not been placed into evidence or anything that she could testify about" and that "the prejudicial effect of it outweigh[ed] the probative value . . . at [the] sentencing -- at [the] punishment phase of the trial." Neither of those objections referenced hearsay, which is the subject of Calhoun's appellate point of error. As a result, Calhoun's appellate argument does not comport with his trial objection.

Calhoun did open the argument on this point of error with the following statement:

> While the trial court has discretion in which evidence of [sic] is admissible, if the evidence is so prejudicial, the trial court should do a balancing of the probative value versus the prejudicial effect. In the instant case, the trial court, if it did do a balancing test, failed to identify the rationale it used in the balancing test.

However, that is simply argument without "appropriate citations to authorities," and we overrule it as inadequately briefed. TEX. R. APP. P. 38.1(i).

Additionally, similar evidence was offered earlier during the trial when Miller's report was offered into evidence. The report included the following observation:

> After he was arrested and put in jail, he quickly found someone else to torture. He identified a young and vulnerable inmate with a developmental disability and began raping and torturing him on an ongoing basis. He was unable to stop torturing even after he knew he was facing aggravated felonies and would receive a long-term prison sentence. He knew he would be put in solitary confinement if

> his behavior was discovered, but he could not stop. David Calhoun will never be safe in a community setting or in the general population at a prison. He will never stop trying to torture someone.

Calhoun said, "No objection," when Miller's report was offered.

We have previously held that "[a]n error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Davis v. State*, 614 S.W.3d 223, 229 (Tex. App.—Texarkana 2020, no pet.) (second alteration in original) (quoting *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004)); *see Josey v. State*, 97 S.W.3d 687, 698 (Tex. App.—Texarkana 2003, no pet.) ("If the same or similar evidence is admitted without objection at another point during the trial, improper admission of the evidence will not constitute reversible error."). "This rule applies whether the same evidence was admitted 'without objection . . . before or after the complained-of ruling.'" *Davis*, 614 S.W.3d at 229 (quoting *Lane*, 151 S.W.3d at 193).

Thus, even if there was error in allowing Miller's punishment testimony, such was waived by admission, without objection, of her report, admitted earlier in the trial.[9]

### B. No Sixth Amendment or Confrontation Clause Objections

Calhoun spends significant time in his brief arguing that he was also denied his Sixth Amendment right to counsel and his right to confront witnesses against him regarding Miller's testimony. However, he made no objections at trial on these topics either. As a result, these objections were not preserved for our review, and we decline to address them. *See Golliday v.*

---

[9]Also, "[b]y operation of law, the evidence admitted during the guilt-innocence phase of the trial is also before the jury at the penalty phase, and the jury may consider all the evidence adduced at the guilt-innocence phase in assessing a defendant's punishment." *Atkinson v. State*, 404 S.W.3d 567, 572 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Wright v. State*, 212 S.W.3d 768, 776 (Tex. App.—Austin 2006, pet. ref'd)).

*State*, 560 S.W.3d 664, 670–71 (Tex. Crim. App. 2018); *Mims v. State*, 607 S.W.3d 419, 428 (Tex. App.—Texarkana 2020, pet. ref'd) (Sixth Amendment); *Allison v. State*, 666 S.W.3d 750, 756 n.4 (Tex. Crim. App. 2023) (Confrontation Clause).

Because none of Calhoun's complaints regarding Miller's punishment testimony were preserved for our review, we overrule the second point of error.

## IV. Conclusion

We affirm the trial court's judgments.

Scott E. Stevens
Chief Justice

Date Submitted: May 27, 2025
Date Decided: July 22, 2025

Do Not Publish

9