

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00526-CR

Arnoldo **DIAZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR12132
Honorable Melisa C. Skinner, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:        Beth Watkins, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: February 14, 2024

AFFIRMED

Appellant Arnold Diaz was indicted on three counts of indecency with a child. A jury found Diaz guilty on all three counts and assessed punishment at forty-six years' confinement. On appeal, Diaz raises three issues: (1) the trial court erred in denying his request for a mistrial; (2) ineffective assistance of counsel; and (3) the trial court erred in denying his motion for speedy trial. We affirm.

### BACKGROUND

On August 23, 2018, Diaz was indicted for two counts of indecency with a child by contact and one count of indecency with a child by exposure. All three counts had a 2016 offense date.

Post-indictment, Diaz and the State consistently engaged in plea negotiations throughout as the parties prepared for trial. In September 2019, Diaz and the State appeared for trial. On the day trial was to commence, the State learned that a recent altercation with criminal implications had taken place between Diaz and two outcry witnesses. Based on this new information, the State requested a "reset" to provide adequate pre-trial disclosures. The trial court denied the request, and the State dismissed the charges against Diaz for further investigation. Prior to the dismissal, the State informed Diaz's counsel that the State would re-present the indictment in the coming weeks. On October 31, 2019, Diaz was reindicted. On August 1, 2022, Diaz's jury trial commenced.

At trial, Diaz elected not to testify. The jury found Diaz guilty on all three counts and assessed punishment at eighteen years each for Counts I and II and ten years for Count III. The trial court ordered that the sentences run consecutively. On appeal, Diaz raises three issues. First, Diaz claims the trial court erred by denying his motion for mistrial. Second, Diaz asserts his trial counsel was ineffective because he failed to offer evidence supporting Diaz's application for community supervision. Third, Diaz argues he was denied his constitutional right to a speedy trial.

## DENIAL OF MISTRIAL

In his first issue, Diaz argues the trial court erred by denying his motion for mistrial after the State impermissibly alluded to his election not to testify.

### Applicable Law

The United States and Texas Constitutions protect an individual's right to be free from self-incrimination. U.S. CONST. amend. V; TEX. CONST. art. I, § 10; *see also* TEX. CODE CRIM. PROC. art. 38.08 ("Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."). "Neither the trial judge nor the prosecutor can comment on the failure of an accused to testify." *Bustamante v.*

*State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). "To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear." *Id.* at 765. "It is not sufficient that the language might be construed as an implied or indirect allusion." *Id.* "The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* "In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character." *Id.*

"A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* at 77. "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.* In this regard, "[e]xcept in the most 'blatant' instances, harm from a comment on a defendant's failure to testify is cured by an instruction to disregard." *Martinez v. State*, 276 S.W.3d 75, 78 (Tex. App.—San Antonio 2008, pet. ref'd). In reviewing whether the statement here falls within the exception, we conduct a non-constitutional harm analysis. *See* TEX. R. APP. P. 44.2(b); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). The following factors guide our review of the trial court's denial of Diaz's motion for mistrial: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the State's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of the punishment absent the misconduct (the strength of the evidence supporting the punishment). *Archie v. State*, 221 S.W.3d 695, 700–01 (Tex. Crim. App. 2007); *Martinez*, 276 S.W.3d at 79. We analyze these factors under an abuse of discretion standard. *Hawkins*, 135 S.W.3d at 77.

*Analysis*

During closing argument in the punishment phase, the State argued Diaz "has never accepted responsibility for what he did, he has never shown any remorse for what he did. You can also consider that." Diaz objected and moved for a mistrial. The trial court sustained the objection, instructed the jury to disregard the statement, and denied Diaz's request. Because the trial court sustained Diaz's objection and instructed the jury to disregard the challenged statement, the only issue before us is whether the trial court erred in denying Diaz's motion for mistrial. *See id.* at 76–77 ("The only adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial.").

Reviewing the severity of the misconduct, we note the State's comment was brief and not repeated. *See Martinez*, 276 S.W.3d at 79 (holding trial court did not err by denying request for mistrial based on State's comment regarding potential perjury). Moreover, we do not find that the comment demonstrated any willful or calculated effort to deprive Diaz of an impartial sentencing. *See id.* Additionally, as a corrective measure, the trial court told the jury to disregard the State's statement and instructed the jury that the argument of counsel was not evidence to be considered in deliberations. *See Rodriguez v. State*, 446 S.W.3d 520, 537 (Tex. App.—San Antonio 2014, no pet.) (holding State did not make comment on defendant's election not to testify and the court's charge and instruction to jury cured any potential harm). The charge of the court further instructed that if the defendant elected not to testify, that circumstance could not be used against him. *See Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011) ("The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury."). Considering all of the evidence, it is not likely that the punishment would have been different had the State not made the comment. We accordingly hold the trial court did not abuse its discretion in denying Diaz's motion for mistrial, and we overrule Diaz's first issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Diaz asserts that his trial counsel was ineffective because his counsel failed to present evidence in support of Diaz's application for community supervision.

### *Applicable Law*

To prevail on an ineffective assistance of counsel claim, Diaz must satisfy two components. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, Diaz must show his trial counsel's performance was deficient. *Id.* This component "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In this vein, counsel's representation is deficient if the assistance falls below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). On the other hand, counsel's representation does not fall below the objective standard of reasonableness simply because another would have selected a different trial strategy. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

If Diaz can show his trial counsel's representation was deficient, he must then satisfy the second *Strickland* component. That is, Diaz must show counsel's deficient performance prejudiced his case. *Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. "In other words, [Diaz] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812. "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* at 813. Diaz "bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Id.*

*Analysis*

During the punishment phase, Diaz's trial counsel offered the testimony of one witness, Diaz's wife—Gloria. Gloria testified to Diaz's military experience and resulting injuries. During closing arguments, Diaz's trial counsel asked the jury to recommend community supervision to the trial court for Count III (indecent exposure). After Diaz's trial counsel began discussing community supervision requirements, the State objected that there were no facts in evidence regarding the general terms of community supervision applicable in sex offender cases. The trial court sustained the objection, leading Diaz's trial counsel to proclaim to the jury, "I've clearly been ineffective representing [Diaz.]" Ultimately, the jury assessed punishment at eighteen years each for Counts I and II and ten years for Count III. The jury further recommended that Diaz's application for community supervision be denied.

Even if properly requested, a jury charged with offense dates occurring in 2016 could not have recommended community supervision if, among other things, (1) the defendant was sentenced to a punishment that exceeded 10 years or (2) the conviction was for indecency with a child by contact, and the child was younger than 14 years of age at the time the offense was committed. *See* TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(1)(C) (2016 ed.); *id.* § 4(d)(1), (5).

On Counts I and II, the jury assessed punishment at eighteen years. Because the term of imprisonment exceeded 10 years, Diaz was ineligible for community supervision on those two counts. *See id.*; *Gonzales v. State*, 748 S.W.2d 510, 513 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (concluding "trial counsel's failure to establish the appellant's entitlement to probation was inconsequential" because appellant was ineligible for probation). However, as Diaz argued in

closing, he was statutorily eligible for community supervision under the then-existing law on Count III.[1]

Assuming without deciding that the trial counsel's representation was deficient, we hold that Diaz has not satisfied the *Strickland* test because he cannot show prejudice. *See Strickland*, 466 U.S. at 687 (requiring the satisfaction of both components for entitlement to relief); *Thompson*, 9 S.W.3d at 813 ("Absent both showings an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable."). While it is true that Diaz's trial counsel stated on the record that he was ineffective, this act of falling on the proverbial sword is not legally sufficient to sustain an ineffective assistance of counsel claim on its own. *See Carter v. Davis*, 946 F.3d 489, 524 (9th Cir. 2019) (noting a trial counsel's decision to retrospectively fall on his sword is not outcome determinative in an ineffective assistance of counsel claim). Diaz must still show that his trial counsel's performance caused him to suffer prejudice to be entitled to relief. *Strickland*, 466 U.S. at 687. When, as here, the focus is on his counsel's performance during punishment phase proceedings, whether prejudice exists would "depend on a reasonable probability that the sentencer would have assessed a more lenient punishment absent the errors." *Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022); *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Accordingly, the question is whether there is a reasonable probability that the jury would have recommended community supervision on Count III had Diaz's trial counsel proffered evidence on community supervision requirements.

The jury, hearing all the evidence, sentenced Diaz to eighteen years on Counts I and II—two years less than the maximum amount allowed under the law. TEX. PENAL CODE § 12.33(a).

---

[1] It is undisputed that the child victim was younger than 14 years of age.

On Count III, the possible range of punishment was two to ten years—the jury assessed punishment at ten years' confinement. *Id.* § 12.34(a). Based on the record, the parties' arguments, and the authority presented, we hold Diaz has not carried his burden under *Strickland* to show that, but for his trial counsel's failure during the punishment phase of his trial, there is a reasonable probability that the jury would have recommended community supervision. We overrule Diaz's second issue.

**SPEEDY TRIAL**

In his third issue, Diaz argues the trial court erred by denying his motion for speedy trial.

*Applicable Law*

An individual accused of a crime has a right to a speedy and fair trial. U.S. CONST. amend. VI; *Shaw v. State*, 117 S.W.3d 883, 888 (Tex. Crim. App. 2003). The right attaches the moment the individual is arrested or formally accused. *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). Although not an exact formulaic determination, the Supreme Court has promulgated four factors to be used by the trial court when assessing a speedy trial claim: (1) length of the delay; (2) reasons for the delay; (3) the defendant's assertion of the right; and (4) whether the defendant suffered prejudice as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 530–31 (1972). The factors must be weighed in tandem with fault, if any, attributable to the State or the defendant; no one factor is dispositive. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

We review the trial court's determination through a bifurcated standard: an abuse of discretion standard for the factual components, and a de novo standard for the legal components. *Id*. Applying this bifurcated standard, "we give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings." *Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016).

*Analysis*

A *Barker* analysis is required only "[i]f the defendant can make a threshold showing that the interval between accusation and trial is 'presumptively prejudicial[.]'" *Id.* at 767. Diaz was first indicted in August 2018, subsequently reindicted in 2019, and his trial did not commence until August 2022. Diaz argues, and the State concedes, that this delay from formal accusation to trial is presumptively prejudicial. *See State v. Lopez*, 631 S.W.3d 107, 114 (Tex. Crim. App. 2021) ("Generally, a delay of eight months to a year, or longer, is presumptively prejudicial and triggers a speedy trial analysis."). Accordingly, we must undertake a *Barker* analysis.

## 1) Reasons for Delay

There is no formula for whether or how much to weigh a reason for a delay and to whom the delay is counted against. *Barker*, 407 U.S. at 531 (opining "different weights should be assigned to different reasons."). For example:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* "Although a finding of 'bad-faith delay' renders relief almost automatic, a finding of mere negligence will not become automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Zamorano*, 84 S.W.3d at 649.

After Diaz's original indictment in August 2018, he was set for trial in October and December 2018. Neither setting resulted in a trial, and the record does not provide any reasoning for the resets. Diaz's next setting—on February 8, 2019—was continued so the State could secure a forensic interview from Child Protective Services ("CPS") and to give Diaz an opportunity to review the additional discovery. Procedurally, nothing substantive occurred at the next two

settings, and there is evidence in the record that the State was having ongoing issues obtaining discovery from CPS. It was not until April 2019 that the CPS discovery was ultimately obtained. Additionally, there were two court settings in May 2019. The record does not reveal what occurred on those dates.

On September 9, 2019, when the parties appeared for trial, the State learned that a recent altercation with criminal implications had taken place between Diaz and two outcry witnesses. Because the State learned of the altercation on the day of trial, it was unable to meet its obligation to disclose to the defense evidence or reports related to the altercation. Unable to obtain a reset, the State dismissed Diaz's case for further investigation. The State asserts, and the record supports, that it informed Diaz's counsel it intended to present another indictment to a grand jury once the investigation into the witness altercation was complete. The record shows the State was ready to present a new indictment to a grand jury on September 20, 2019; however, at the request of Diaz's counsel, the State postponed presenting the indictment in order that a plea offer could be conveyed to Diaz. Diaz and his counsel also used this time to create a packet detailing his military history. Diaz was reindicted on October 31, 2019.

In November 2019, Diaz retained new counsel. A month later, a setting was continued at the request of both Diaz and the State. On February 6, 2020, Diaz filed a motion for continuance. The next trial date was February 21, 2020; however, there were bond issues as a result of Diaz's counsel withdrawing from his case. Diaz's case was reset five additional times during the COVID-19 pandemic because in-person proceedings were not taking place in Bexar County. Diaz again changed counsel on October 1, 2020.

Diaz's next setting was on July 14, 2021. Because of the pandemic, this was the first authorized in-person jury trial setting since March 2020. Prior to the commencement of trial, Diaz and the State reached a plea agreement, and a pre-sentence investigation was ordered. On

September 14, 2021, the trial court rejected the plea agreement. Thereafter, Diaz filed motions for continuance on December 17, 2021, and June 17, 2022. On August 1, 2022, Diaz's jury trial commenced.

The record shows that the State induced the reset of at least a few settings due to discovery issues and its dismissal of the first indictment. *See Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006) (opining "[t]he state's duty to reveal *Brady* material to the defense attaches when the information comes into the state's possession[.]"). The record also shows trial dates on February 21, 2020, December 17, 2021, and June 17, 2022 were continued at Diaz's request. *See Balderas*, 517 S.W.3d at 768 ("Delay caused by either the defendant or his counsel weighs against the defendant."). The record further reveals throughout the case Diaz and the State consistently engaged in good-faith plea negotiations which ultimately resulted in a plea agreement that the trial court later rejected. *See State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999) ("Delay caused by good faith plea negotiations is not the result of negligence or a deliberate attempt to delay the trial.") (internal quotations omitted).

We conclude that the factors contributing to the delay weigh against both parties. The State-induced resets, including those for discovery and the COVID pandemic, weigh slightly against the State. *See Starks v. State*, 266 S.W.3d 605, 611 (Tex. App.—El Paso 2008, no pet.) (opining continuances on part of the State are weighed slightly against the State if "there is no evidence the State intended to cause a delay for strategic gain."); *Richardson v. State*, 631 S.W.3d 269, 276 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (noting discovery delays on the part of the State, even if proceeding in good faith, weigh slightly against the State); *State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.) (concluding COVID delays weigh "only slightly against the State" where no evidence of deliberate delay on the part of the State was shown). The dismissal initiated by the State to gather evidence and reports related to the

altercation, of which they became aware the day of trial, and in which no bad faith is shown here, weighs against the State—but not heavily. *Harper v. State*, 567 S.W.3d 450, 459–60 (Tex. App.—Fort Worth 2019, no pet.); *United States v. Colombo*, 852 F.2d 19, 23–25 (1st Cir. 1988); s*ee also Santos v. State*, No. 13-15-00353-CR, 2018 WL 2252877, at *8 (Tex. App.—Corpus Christi–Edinburg May 17, 2018, pet. ref'd) (mem. op., not designated for publication). The numerous plea negotiations, made in good faith, are not weighed against the State. *State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999). Diaz's part in the delay, including his motions for continuance, weigh against the defense. *See Balderas*, 517 S.W.3d at 768; *Porter v. State*, 540 S.W.3d 178, 182 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

**2) Diaz's Assertion of the Right**

"Whether and how a defendant asserts his right is closely related to the other factors[.]" *Barker*, 407 U.S. at 531. "The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Id.* "The more serious the deprivation, the more likely a defendant is to complain." *Id.* "The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531–32.

Diaz raised the issue of delay in an un-urged motion to dismiss in May 2020. He subsequently filed his motion for speedy trial approximately two years and ten months after his original indictment and approximately one year and eight months after his second indictment. This motion was heard in October 2021. Diaz was represented by counsel during the entirety of his criminal proceedings, and this record and Diaz's briefing do not provide reasoning for the delay in asserting his right to a speedy trial. This factor weighs against a finding of a violation of the speedy trial right. *See Dragoo v. State*, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003) (opining that

a three-and-one-half year delay by defendant in asserting speedy trial right weighed very heavily against a finding of a violation).

### 3) Prejudice

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. "The Supreme Court has identified three such interests: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired." *Zamorano*, 84 S.W.3d at 652 (citing *Barker*, 407 U.S. at 532). "[W]ith respect to the third interest, affirmative proof of particularized prejudice is not essential to every speedy trial claim, because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Dragoo*, 96 S.W.3d at 315. "On the other hand, this 'presumption of prejudice' is 'extenuated . . . by the defendant's acquiescence' in the delay." *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 658 (1992)).

During the hearing on his speedy trial motion, Gloria testified to the anxiety Diaz felt due to the criminal charges and the financial resources expended on legal fees and bond fees since his first indictment. Although anxiety can support a finding of prejudice, Diaz did not present sufficient evidence that the anxiety he felt went beyond the level normally associated with criminal charges. *See Cantu v. State*, 253 S.W.3d 273, 286 (Tex. Crim. App. 2008) ("[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation."). Regarding pretrial incarceration, Diaz does not dispute that he was released on bond for much of the time that his case proceeded through the pretrial process. *See Smith v. State*, 436 S.W.3d 353, 367 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd)

(holding four months of pretrial incarceration in a seven-year case did not further the interest of preventing oppressive pretrial incarceration).

Gloria also testified that her mother, who died in 2020, would have testified favorably for Diaz. However, the State put on witnesses calling into question Diaz's mother's mental competency and her diagnosis of Parkinson's disease. "Because prejudice is obvious when witnesses die or disappear during a delay, a defendant need only show that the prospective witness was believed to be material to the case, not that the witness would have testified favorably to the defense." *Webb v. State*, 36 S.W.3d 164, 174–75 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). "In determining if the witness was believed to be material to the case, a court can consider whether there is any evidence that the defendant attempted to obtain the witness's statement during the delay." *Id.* at 176. Here, Diaz does not point to any evidence in the record showing that he attempted to obtain Gloria's mother's statement after he was formally charged in 2018 and 2019 until her death in 2020. Further, there was no offer of proof made to establish what Gloria's mother's testimony would have been. Accordingly, Diaz has not shown the testimony of the deceased was material to his case. *See id.*

Although there is some evidence of general anxiety attributed to Diaz and the possibility that a now-deceased witness may have testified in his favor, without more, we conclude that Diaz failed to identify any significant prejudice caused by the State's delay in bringing him to trial. *See id.*; *Cantu*, 253 S.W.3d at 286. Accordingly, this factor weighs heavily against Diaz. *Webb*, 36 S.W.3d at 176; *Conatser*, 645 S.W.3d at 931.

### 4) *Barker* Balancing

After a review of the *Barker* factors, we uphold the trial court's ruling denying Diaz's motion for a speedy trial. On this record, we hold that Diaz's Sixth Amendment right was not violated. We overrule Diaz's third issue.

## CONCLUSION

Having overruled each of Diaz's issues, we affirm the judgment of the trial court.

Liza A. Rodriguez, Justice

DO NOT PUBLISH