

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00001-CR

TONY CARL STEEL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR24-152

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Rusk County jury found Tony Carl Steel guilty of third-degree-felony evading arrest with a motor vehicle. *See* TEX. PENAL CODE ANN. § 38.04 (Supp.). After the jury found the State's punishment enhancement allegations true, it assessed a sentence of sixty years' imprisonment. On appeal, Steel argues that the trial court erred by (1) failing to allow him additional peremptory strikes, (2) denying his motion for mistrial after jurors saw him in restraints, (3) admitting Steel's pre-Mirandized[1] statements, and (4) admitting Steel's wife's hearsay testimony.

We find that Steel did not preserve his first point of error for our review and that there was no abuse of discretion in denying a motion for mistrial since no juror testified that they saw Steel in restraints. We also find that Steel's pre-Mirandized statements were admitted, without objection, later in the trial and that the trial court did not err by overruling a hearsay objection to Steel's wife's testimony. As a result, we affirm the trial court's judgment.

## I.    Factual Background

### A.    Voir Dire

Steel's first two points of error address issues that were uncovered during voir dire. Just as voir dire was about to begin, Steel's counsel "object[ed] to proceeding on this panel." Steel's counsel explained,

> My understanding is I myself saw my client being brought here from the jail in handcuffs. I will note that he's in civilian clothes, but he was in handcuffs clear to see as he was being brought from the jail in handcuffs. I saw at least one juror with a juror card out on the street as they passed in front of us. I saw a couple of

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

others that I could not tell if they were jurors or not because I couldn't see if they had cards.

And then it's my understanding that my client was brought up to the third floor in the hallway, and the handcuffs were finally removed. And then my client was brought in by sheriff's deputies while potential jurors were both in the room and out in the hallway and would have been able to see that my client was in custody. I think that improperly taints this panel. I don't think we can proceed on the -- and preserve my client's rights under the Constitution of due process requirements and all the elements thereto.

The trial court overruled Steel's objection and said he would "allow counsel for defense to do whatever voir dire he deem[ed] necessary to make sure" and would then reconsider the issue. Counsel said, "Judge, even though we haven't really started the trial yet, I'll ask for a mistrial," but the trial court overruled the objection.

During Steel's questioning of the venire, without mentioning restraints, Steel asked the veniremembers if they had seen him either walking into the courthouse that morning or waiting in the third-floor hallway, and panelists 3, 7, 8, 17, 33, 39, 40, 43, 46, and 53 said they had.[2] The trial court called those panelists for individual questioning while the remaining panel recessed.

Before individual questioning, Steel's counsel said, "It's come to my attention and I want to correct the record that [Steel] was already out of handcuffs by the time he was in the third-floor hallway." In other words, prospective jurors could have seen Steel in restraints only if they had seen him outside of the courthouse or on the second floor, but not if they had seen him on the third floor where the courtroom was located.

During individual questioning, the following was established:

---

[2] By agreement of the parties, panelist 35, who also said she had seen Steel that morning was excused because she had cancer.

3

- Panelist 3 testified that she saw Steel that morning but did not know who he was or whether he was a juror. Because Panelist 3 did not indicate that she saw Steel in handcuffs, Steel did not move to strike her for cause.

- Panelist 7 testified he saw Steel when he walked into the courtroom and did not indicate he saw Steel in handcuffs. Because the courtroom was on the third floor and counsel had learned that Steel was already out of handcuffs by the time he reached the third floor, Steel retracted his challenge to Panelist 7.

- Panelist 8 said he saw Steel in the hallway walking with the sheriff but did not mention seeing Steel in handcuffs. As a result, Steel did not move to strike Panelist 8, but the trial court granted the State's challenge for cause to this panelist.

- Panelist 17 said he saw a deputy escort Steel into the courthouse that morning and did not mention restraints but was struck for cause after he informed the trial court that he believed that a defendant's refusal to testify was an admission of guilt.

- Panelist 33 said she saw Steel that morning but only after she was in the courtroom. After she clarified that she did not remember seeing Steel outside of the courtroom and mentioned nothing regarding handcuffs, Steel challenged her for cause, but the trial court denied the challenge.

- Panelist 39 testified that he saw Steel as he was in line waiting to come into the courtroom but did not mention handcuffs. Accordingly, Steel withdrew his challenge to this panelist.

- Panelist 40 denied seeing Steel before entering the courtroom, and Steel did not challenge him for cause.

- Panelist 43 said she saw Steel walking across the same floor that the courtroom is on and said nothing about restraints. Steel did not move to challenge her for cause after the questioning.

- Because Panelist 46 was a correctional officer, saw Steel that morning, and believed he was jailed in the same facility where she worked, she was struck for cause by agreement.

4

- Because Panelist 53 was outside of the strike zone, there was no need to question Panelist 53.

After the individual questioning, the trial court provided both sides with ten peremptory strikes. Even so, Steel objected and requested "additional preemptory [sic] strikes so that [they could] strike the people that [they] challenged for cause that [the court] did not strike for cause." The trial court overruled Steel's objection. Steel used peremptory strikes to strike Panelist 7 but left Panelists 3 and 33 on the panel. Even so, the State used its peremptory strikes to strike Panelists 3 and 33, and Steel did not indicate what jurors he would have struck had he been granted the two additional peremptory strikes.

## B. The Trial

Steel's last two points of error concern the admission of his statements caught on a recording and statements made by his wife.

Outside of the presence of the jury,[3] Steel objected to the introduction of a portion of an officer's body-camera recording, which showed that Steel told the officer he had evaded arrest with a motor vehicle before. Because Steel had not been read his *Miranda* rights, Steel sought to exclude that portion of the body-camera recording on the ground that it violated his Fifth Amendment right to remain silent. In response, the State argued that Steel volunteered the information and was not responding to any questioning by the officer at the time. After the State played the recording of Steel's statements, the trial court overruled Steel's objection. The State then called three officers to support its case-in-chief.

---

[3]On the day of trial, Steel renewed his motion for mistrial, but it was denied.

5

Levi Morrill, an officer with the Henderson Police Department (HPD), testified that he attempted to conduct a traffic stop after watching Steel's vehicle drive through multiple stop signs without stopping. Morrill testified that he activated his patrol unit's lights and sirens, but Steel did not yield and instead led officers on a high-speed chase. Bryan Graham, a patrol sergeant with the HPD, testified that he was riding with Morrill during the high-speed chase that reached speeds "[p]robably close to a 100" miles per hour. Footage of the chase was played for the jury. In describing the chase, Morrill testified that Steel went into the oncoming lane of travel several times while "driving really, really fast," seemed to know the "really windy, dark county roads," pulled into his own driveway, and abandoned his car in favor of running into the woods to escape custody.

Morrill testified that he noticed a female passenger in Steel's car as he exited his patrol unit to chase Steel but did not stop to talk to her at that time. According to Morrill, the chase ended when officers found Steel hiding against some brush. After Steel was apprehended, he and Graham had the opportunity to speak with the female passenger, who they learned was Steel's wife, Angela Lacey. Over a hearsay and Confrontation Clause objection, Morrill testified that Lacey, who was "very rattled," said that she attempted to convince Steel to stop. When Graham was about to testify about Lacey's statement, Steel again objected on hearsay grounds. The State established that Lacey's hands and voice were shaky, she displayed "the classic signs of being scared," and she gave Graham her impression of what had happened. The trial court overruled Steel's objection and allowed Graham to testify that Lacey had told Steel to stop the car but that he refused.

6

Another HPD officer, Antonio Villalobos, who was also on the scene, testified he was checking on Steel's health when Steel volunteered statements that "he was a bad-ass driver" and boasted "about holding the record of . . . over a two-hour pursuit that he was involved in and that he made the front page." Graham also made similar statements without objection. When asked if HPD officers had Mirandized Steel, Graham responded, "Not until we asked him any questions that were pertinent to that case."

After hearing the evidence and watching the recording of the high-speed chase, the jury found Steel guilty of evading arrest with a motor vehicle.

## II. Steel Did Not Preserve His First Point of Error

In his first point of error, Steel argues that the trial court erred by failing to grant him additional peremptory strikes after it denied a challenge for cause. Because the record shows that Steel did not properly preserve this issue, we overrule it.

An appellant alleging that a trial court should have granted a challenge for cause "must show that he was harmed because he was forced to use a peremptory strike to remove the venire person and that he suffered a detriment from the loss of that peremptory strike." *Buntion v. State*, 482 S.W.3d 58, 83 (Tex. Crim. App. 2016). Error complaining about the lack of additional peremptory strikes is only preserved

> if appellant (1) used all of his peremptory strikes, (2) asked for and was refused additional peremptory strikes, and (3) was then forced to take an identified objectionable juror whom appellant would not otherwise have accepted had the trial court granted his challenge for cause (or granted him additional peremptory strikes so that he might strike the juror).

7

*Price v. State*, 594 S.W.3d 674, 678 (Tex. App.—Texarkana 2019, no pet.) (quoting *Buntion*, 482 S.W.3d at 83).

Here, the record shows that Steel only established the first two requirements of error preservation but failed to establish the third. While he requested additional peremptory strikes, Steel did not identify which veniremembers he wished to strike. As a result, because the record fails to show that Steel "was forced to accept an objectional juror . . . error is not preserved." *Id.* Accordingly, we overrule Steel's first point of error.

### III. The Trial Court Did Not Abuse Its Discretion by Overruling the Motion for Mistrial

A mistrial is an extreme remedy to be sparingly used "for a narrow class of highly prejudicial and incurable errors" committed during the trial process. *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018). "We review a trial court's denial of request for a mistrial under an abuse-of-discretion standard." *Barba v. State*, 486 S.W.3d 715, 720 (Tex. App.— Texarkana 2016, no pet.) (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Sanders v. State*, 387 S.W.3d 680, 687 (Tex. App.—Texarkana 2012, pet. struck)). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement, that is, when the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)). "If the ruling was within the zone of reasonable disagreement, it must be upheld." *Barba*, 486 S.W.3d at 720. "A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and

8

expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

In his second point of error, Steel argues that the trial court abused its discretion by overruling his "motion for mistrial after there was evidence that Appellant had been brought into the courthouse in restraints and seen by the potential jurors." Yet, contrary to Steel's assertion, the record shows that no juror testified that they saw Steel in restraints. As a result, we find that the trial court properly overruled Steel's motion for mistrial.

## IV. Any Error Related to Admission of Steel's Pre-Mirandized Statements Was Cured

In his third point of error, Steel argues that the trial court erred by overruling his objection to his pre-Mirandized statements. Yet, although he objected to the recording depicting his statements, Steel did not object to the following portion of Graham's testimony:

> Q. (BY [THE STATE]) What did he just say at the end there, Sergeant Graham?
>
> A. He said that he was a bad-ass driver and this isn't the first time that he's done this, and he holds the record for the longest police chase in Rusk County.
>
> Q. And what did he say about his car?
>
> A. He said if he had a better car, he might have outrun us, other than the Caliber.
>
> Q. What kind of car was it?
>
> A. A Dodge Caliber.
>
> Q. Does that sound like a person who knew he was running from the police?
>
> A. Yes, sir.

9

Q.      Making excuses as to why he failed?

A.      Yes, sir.

Steel also failed to object to Villalobos's testimony that Steel said "he was a bad-ass driver" and was boasting "about holding the record of . . . over a two-hour pursuit that he was involved in and that he made the front page."

We have previously stated that "[a]n error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Davis v. State*, 614 S.W.3d 223, 229 (Tex. App.—Texarkana 2020, no pet.) (second alteration in original) (quoting *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004)); *see Josey v. State*, 97 S.W.3d 687, 698 (Tex. App.—Texarkana 2003, no pet.) ("If the same or similar evidence is admitted without objection at another point during the trial, improper admission of the evidence will not constitute reversible error."). "This rule applies whether the same evidence was admitted 'without objection . . . before or after the complained-of ruling.'" *Davis*, 614 S.W.3d at 229 (quoting *Lane*, 151 S.W.3d at 193).

Because the substance of Steel's statements forming the basis of this appellate complaint was admitted elsewhere without objection, we overrule Steel's third point of error.

## V.      The Trial Court Did Not Abuse Its Discretion in Admitting the Wife's Statement

In his last point of error, Steel argues that the trial court erred by admitting Lacey's statement, over objection, that she tried to get Steel to stop the car instead of leading police on a chase.

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor*, 268 S.W.3d at 579) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

"Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing TEX. R. EVID. 801(d)). "In order for hearsay to be admissible, it must fit into an exception provided by a statute or the Rules of Evidence." *Id.* (citing TEX. R. EVID. 802). We find that the theory of law applicable to the trial court's decision is the excited-utterance exception, which allows admission of a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2).

"The basis for the excited utterance exception is 'a psychological one, namely, the fact that when a [person] is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for *reflection* necessary to the fabrication of a falsehood and the "truth will

come out.'"'" *Zuliani*, 97 S.W.3d at 595 (quoting *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)). "In other words, the statement is trustworthy because it represents an event speaking through the person rather than the person speaking about the event." *Id.*

In determining whether a hearsay statement is admissible as an excited utterance, the court may consider factors that "include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving." *Apolinar v. State*, 155 S.W.3d 184, 187 (Tex. Crim. App. 2005). Those are simply factors to consider; they are not, by themselves, dispositive. *Zuliani*, 97 S.W.3d at 596. "The critical determination is 'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event' or condition at the time of the statement." *Id.* (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994)).

Here, the trial court was free to find that not much time had elapsed between the chase ending and Lacey's statement that she tried to get Steel to stop. Morrill testified that Lacey made her statement within ten minutes of the chase ending while Graham testified that Lacey's statement came after the chase "had just happened." While the record is unclear as to whether Lacey's statement was in response to a question, testimony from HPD officers describing Lacey's demeanor indicated that she was still in the grip of fear when making the statement that incriminated her husband.

After reviewing the evidence supporting the relevant factors considered in an excited-utterance analysis, we cannot say that the trial court's decision to allow evidence of Lacey's

12

statement was so clearly wrong as to lie outside the zone of reasonable disagreement. As a result, the trial court did not abuse its discretion by admitting the statement, and we overrule Steel's last point of error.[4]

## VI.     Conclusion

We affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:          June 9, 2025
Date Decided:            July 15, 2025

Do Not Publish

---

[4]To the extent that Steel's brief can be fairly read to raise a Confrontation Clause issue under *Crawford v. Washington*, we find that error, if any, in admitting Lacey's testimony was harmless. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004). "In determining specifically whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt," the Texas Court of Criminal Appeals has instructed us to consider "1) how important . . . the out-of-court statement [was] to the State's case; 2) whether the out-of-court statement was cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the prosecution's case." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). Here, Lacey's statement was unnecessary since the recording of the chase demonstrated that Steel evaded arrest, and Steel's own statements supported the conviction. Although Lacey's statement that she told Steel to stop was not cumulative of any other evidence, her statement that Steel refused to stop was corroborated by the recording and by HPD officer testimony that Steel thought himself to be a "bad-ass driver" who bragged about holding the record for the longest police chase in Rusk County. In light of the overwhelming evidence of Steel's guilt, we are satisfied beyond a reasonable that the error did not contribute to the conviction. *See id.* at 690–91.

13